**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 6:16-cv-03105-MDH** |
| **v.** | ) | |
| **GRISHAM FARM PRODUCTS, INC.,** | ) | |
| **Defendant.** | ) | |

**ORDER AND CONSENT JUDGMENT**

This Court, having reviewed and taken notice of the pleadings and motions and with the consent of the Parties hereby enters Judgment as follows:

**I. THE LITIGATION**

1. On March 22, 2016, the Commission filed a three-count complaint (Doc. 1) under Title I of the Americans with Disabilities Act of 1990 (ADA), as amended, 42 U.S.C. § 12101 *et seq*., to correct unlawful employment practices on the basis of disability; under Title II of the Genetic Information Non-Discrimination Act of 2008 (GINA), 42 U.S.C. § 2000ff *et seq*., to correct unlawful employment practices on the basis of genetic information; and pursuant to the ADA, GINA, and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to provide appropriate relief to Phillip Sullivan. Specifically, the Commission alleged that Grisham Farm Products, Inc. violated the ADA (Count I) and GINA (Count II) by requiring job applicants, including Sullivan, to fill out a three-page "Health History" before they would be considered for a job. The Commission also alleged Defendant failed to maintain or retain employment records as required by law (Count III).

2. The Commission invoked and this Court has jurisdiction over the both the subject matter and the parties in this litigation.

3. After Defendant Grisham Farm filed its Answer (Doc. 4), the Commission filed a motion for judgment on the pleadings with respect to Counts I and II (Doc. 7), which is currently pending.

4. In the joint motion for entry of judgment (Doc. 9), Grisham Farm states that it does not oppose the Court's entry of judgment on the pleadings with respect to Counts I and II.

5. Furthermore, in the interest of prompt and full resolution of this matter and as a result of having engaged in settlement negotiations, the Parties agree that Count III should also be fully and finally resolved by entry of this Order and Judgment (Doc. 9).

## II. STIPULATED FINDINGS

6. Phillip T. Sullivan, a retired law enforcement officer and a person with disabilities, learned Grisham Farm was hiring and decided to seek a warehouse job.

7. Sullivan downloaded Grisham Farm's seven-page online "Application for Employment" ("Application") on or about July 28, 2014.

8. The Application included a three page health history form with 43 questions for all applicants to answer.

9. Although the top of the first page of the health history form states that "[a]ll questions must be answered," Sullivan was concerned he would reveal his medical conditions and disabilities to Grisham Farm if he fully and completely answered each question on the health history form.

10. Furthermore, fully answering the questions on the health history as to whether he "consulted" a healthcare provider "within the past 24 months," regardless of whether he had been diagnosed with a particular condition, or "[sought] advice, diagnosis or treatment" from a healthcare provider, would have also revealed Sullivan's genetic information with respect to himself or his family members.

11. Sullivan refused to complete the health history form, did not submit his Application to Grisham Farm, and instead contacted the Commission, with whom he filed a charge of discrimination challenging the propriety of the health history form.

12. During the Commission's investigation, the Commission learned that Grisham Farm failed to retain employment applications as required by 42 U.S.C. § 2000e-8(c).

13. As a direct and proximate result of Grisham Farm's actions, Sullivan suffered actual damage including but not limited to failure to gain employment, inconvenience, embarrassment, and loss of enjoyment of life.

14. The Parties stipulate that Mr. Sullivan's damages are $10,000.00.

## III. JUDGMENT ON COUNTS I AND II

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings will be granted "where the moving party has clearly established that no material issue of fact remains and the moving party is entitled to judgment as a matter of law." *Waldron v. Boeing Co.*, 388 F.3d 591, 593 (8th Cir. 2004) (quoting *Potthoff v. Morin*, 245 F.3d 710, 715 (8th Cir. 2001)). The Court must accept as true the facts as pleaded by the non-moving party and draw all reasonable inferences from the pleadings in favor of the non-moving party. *See Syverson v. FirePond, Inc.*, 383 F.3d 745, 749 (8th Cir. 2004) (citation omitted). In considering a motion to dismiss, the Court may consider some materials outside of the pleadings, such as matters of

public record, items appearing in the record of the case, or exhibits attached to the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). In accordance with the above standard and Plaintiff's unopposed motion, the Court hereby orders as follows with respect to Counts I and II:

**A. Count I - Grisham Farm's application violates the ADA.**

1. As the Eighth Circuit has noted, the ADA "limits the scope of information that employers may seek and disclose about their employees' medical condition." *Cossette v. Minnesota Power & Light*, 188 F.3d 964, 968 (8th Cir. 1999) (citing 42 U.S.C. § 12112(d)).

2. As a preliminary matter, the fact that Sullivan did not ultimately submit an application does not preclude relief. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365-71 (1977). As the Supreme Court noted, "[t]he effects of and the injuries suffered from discriminatory employment practices are not always confined to those who were expressly denied a requested employment opportunity" and "discriminatory polic[ies] can surely deter job applications from those who are aware of it and are unwilling to subject themselves to the humiliation of explicit and certain rejection." *Id.* at 365.

3. The nature of the protections afforded individuals with respect to being subjected to "medical examinations and inquiries" by covered employers depends on the "stage" at which the medical information is sought: (a) pre-offer stage, (b) post-offer but pre-employment stage, or (c) employment stage. *See e.g., Brady v. Potter*, 2004 WL 964264, at *4 (D. Minn. 2004) (articulating stages of 42 U.S.C. § 12112(d)).

4. Because Grisham Farm had not extended a job offer to Sullivan, it was prohibited from "conduct[ing] a medical examination or mak[ing] inquiries… as to whether [Sullivan] is an individual with a disability or as to the nature or severity of such disability." 42 U.S.C. § 12112(d)(2)(A); *see also Brady*, 2004 WL 964264, at *4; *cf. Cossette*, 188 F.3d at 968 (8th Cir.

1999) (noting the ADA "permits employers to require a medical examination of a prospective employee only after an offer of employment has been made").

5. Section 12112(d)(2)(A)'s prohibition against pre-offer medical examinations or inquiries is "premised on Congress's belief that '[h]istorically, employment application forms and employment interviews requested information concerning an applicant's physical or mental condition'" and "Congress believed that employers were using this information 'to exclude applicants with disabilities – particularly those with so-called hidden disabilities [] – before their ability to perform the job was even evaluated.'" *Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1212 (11th Cir. 2010) (quoting H.R. Rep. No. 101-485, pt. 2, at 72–73); *see also Griffin v. Steeltek, Inc.*, 160 F.3d 591, 594-95 (10th Cir. 1998) ("[t]he legislative history of the ADA indicates that Congress wished to curtail all questioning that would serve to identify and exclude persons with disabilities from consideration for employment by drafting 'a prohibition on pre-offer medical examinations or inquiries[.]'").

6. Although the ADA includes a provision for "acceptable inquiry" at the pre-offer stage into "the ability of an applicant to perform job-related functions[,]" 42 U.S.C. § 12112(d)(2)(B), both the legislative history and implementing regulations make clear that such inquiries should not be phrased in terms of disability. For example, both Congress and the Commission provide the following example of a permitted inquiry: "[A]n employer may ask whether the applicant has a driver's license, if driving is an essential job function, but may not ask whether the applicant has a visual disability. This prohibition against inquiries regarding disability is critical to assure that bias does not enter the selection process." H.R. REP. 101-485, 72-73, 1990 U.S.C.C.A.N. 303, 355-56; 29 C.F.R. Pt. 1630, App. at 362-63 (1998) (same driving example). In its regulatory interpretive guidance, the Commission explains that "[e]mployers may ask questions that relate to the applicant's ability to perform job-related functions" but

"these questions should not be phrased in terms of disability." 29 C.F.R. Pt. 1630, App. at 362-63.

7. Because Grisham Farm required all job applicants, including Sullivan, to complete a pre-offer health history form, which inquired into whether the applicant suffered from twenty-seven (27) different types of health conditions – including everything from allergies to epilepsy to breast disorder to heart murmur to sexually transmitted diseases to depression to varicose veins and beyond – this Court holds that Grisham Farm violated the ADA, 42 U.S.C. § 12112(d).[1]

**B. Count II - Grisham Farm's application also violates GINA.**

1. GINA prohibits employers from "request[ing]… genetic information with respect to an employee or a family member of the employee" except in limited situations not applicable here. *See* 42 U.S.C. § 2000ff-1(b). The term "employee" as used in the statute includes "an applicant for employment[.]" 29 C.F.R. § 1635.2(c). The above prohibition includes "making requests for information about an individual's current health status in a way that is likely to result in a covered entity obtaining genetic information." *Id.* at § 1635.8(a).

2. The GINA statute and regulations do not, however, prohibit an employer from requesting non-genetic medical information about a "manifested" disease, disorder, or pathological condition of an employee, even if the "manifested" disease, disorder, or pathological condition "has or may have a genetic basis or component." *See* 42 U.S.C. § 2000ff-9; 29 C.F.R. § 1635.12. A disease, disorder, or pathological condition is considered

[1] The Commission alleges Sullivan has disabilities, Doc. # 1, at ¶ 21, but Grisham Farm did not admit the same in its Answer; however such a fact is not material to resolve the Commission's motion because "[a] job applicant need not make a showing that he or she is disabled or perceived as having a disability to state a prima facie case under 42 U.S.C. § 12112(d)(2)." *Griffin,* 160 F.3d at 595; *see also Harrison*, 593 F.3d at 1213-14 (noting that "[g]iving effect to the full statute, § 12112(d)(2) does not limit coverage to applicants who are also 'qualified individuals with disabilities.'"); *cf*. C*ossette*, 188 F.3d at 969-70 (citing *Griffin* favorably and holding that "whether or not [plaintiff] is disabled, the ADA protects [them] from unauthorized disclosures of medical information").

"manifested" if the individual "has been or could reasonably be diagnosed with the disease, disorder, or pathological condition by a healthcare professional[.]" 29 C.F.R. § 1635.3(g). A disease, disorder, or pathological condition is not considered manifested "if the diagnosis is based principally on genetic information." *Id.*

3. Grisham Farm's application requires applicants to reveal whether they have "[c]onsulted a doctor, chiropractor, therapist or other health care provider within the past 24 months" and to identify whether "future… diagnostic testing… [has] been recommended or discussed" with their medical provider. Doc. 1-1 at 4-5. These questions would require an applicant without the manifestation of, for example, high blood pressure, heart disease, or breast cancer, who has preventatively "consulted" with a physician or been told by a physician to get diagnostic testing in light of their family history or risk factors, to reveal such information to Grisham Farm. The Court finds the solicitation of such information is a violation of GINA.

4. This Court holds that Grisham Farm's action of requiring job applicants to fill out the three-page health history form violated GINA, 42 U.S.C. § 2000ff-1(b).

## IV. JUDGMENT ON COUNT III

Although the Commission did not move for judgment on the pleadings with respect to Count III, the parties have agreed that this Court should resolve all issues raised by Plaintiff's Complaint and have consented to this Court holding that Grisham Farm violated 42 U.S.C. § 2000e-8(c)) and the Commission's recordkeeping regulations found at 29 C.F.R. Part 1602(C) due to its failure to maintain and retain employment records as required by law (Docs. 9, 9-1).

## V. REMEDIES

1. Because of its violations of federal employment law with respect to pre-offer medical inquiries, Grisham Farm, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them are permanently prohibited from requiring

any pre-offer medical examinations or making any pre-offer medical inquiries, including but not limited to use of any health history form, in violation of the ADA, 42 U.S.C. § 12112(d), and GINA, 42 U.S.C. § 2000ff-1(b).

2. Grisham Farm, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, are further ordered to make and preserve all records relevant to the determination of whether unlawful employment practices have been or are being committed, in accordance with the ADA, 42 U.S.C. § 12117(a), and GINA, 42 U.S.C. § 2000ff-6(a), both of which incorporate by reference 42 U.S.C. § 2000e-8(c).

3. For a period of five years after entry of this Order and Judgment, the Commission shall have the right, upon notice to Grisham Farm of at least one (1) business day, to enter onto and inspect Defendant's premises to ensure compliance with this Order and Judgment and federal anti-discrimination laws.

4. Finally, Grisham Farm is ordered to pay $10,000.00 to Sullivan for the damages suffered that are a direct and proximate result of its violation of the ADA, 42 U.S.C. § 12112(d) and GINA, 42 U.S.C. § 2000ff-1(b), to be paid as follows: $5,000.00 on July 15, 2016 and $5,000.00 on August 15, 2016.

**IT IS SO ORDERED.**
Date: June 8, 2016

*/s/ Douglas Harpool*
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**